NOT DESIGNATED FOR PUBLICATION

No. 117,302

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CRYSTAL NICOLE KURI,
*Appellant*,

v.

STATE OF KANSAS, DEPARTMENT OF LABOR,
EMPLOYMENT SECURITY BOARD OF REVIEW,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed December 1, 2017. Affirmed.

*Crystal Nicole Kuri*, appellant pro se.

*Glenn H. Griffeth*, of Kansas Department of Labor, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

PER CURIAM:  Crystal Nicole Kuri applied for unemployment benefits with the Kansas Department of Labor (KDOL) after she was terminated from her employment with College Hills OPCO, LLC (College Hills). Her request for benefits was denied by the KDOL after it was determined that she had been terminated for misconduct. The denial was affirmed by a KDOL Unemployment Insurance Referee (UI Referee). The referee's denial was affirmed by the Employment Security Board of Review (the Board). The Board's decision was affirmed by the Sedgwick County District Court after Kuri petitioned for judicial review of the KDOL's decision. Kuri now appeals to this court, arguing (1) that unsubstantial evidence exists to support the determination that she failed

1

to appear at the telephone hearing held by the KDOL's UI Referee, and (2) that unsubstantial evidence exists to support the determination that she was terminated for misconduct. For reasons set forth below, we reject these arguments. Accordingly, we affirm.

Kuri worked for College Hills as a nurse from April 25, 2016, to August 4, 2016. On August 4, 2016, Kuri was discharged from her employment for unprofessional conduct in the workplace.

As a result of her termination, Kuri filed for unemployment benefits (benefits) with the KDOL. Under K.S.A. 44-706, because Kuri had been terminated for misconduct, the KDOL denied her claim for benefits. The KDOL informed Kuri of her right to appeal the denial.

Kuri appealed the denial of benefits and was granted a telephone hearing before a KDOL UI Referee. The KDOL notified Kuri of the hearing. The notice included instructions for hearings on unemployment insurance appeals. Those instructions specifically warned against the use of cell phones:

> "The appearance of a party or witness by cell phone is permitted. However, this will only be allowed under safe conditions as determined by the referee. If the call is dropped or it is difficult for the referee to communicate with any individual participating in the hearing, the hearing shall proceed without the participation of that party or witness. If the hearing proceeds, the inability of the party or witness to participate shall be considered a non-appearance for the purpose of rendering a decision on the merits of the case. *If you use a cell phone, make sure you have good reception, your phone is fully charged and you are not driving or riding in a vehicle while participating in a hearing*." (Emphasis added.)

On September 30, 2016, Kuri's telephone hearing was conducted by conference call. At the beginning of the hearing, the UI Referee once again warned Kuri about her use of a cell phone:

> "Ms. Kuri, since you are participating by cell phone, just please be advised that you may participate by cell phone so long as you are not driving and are participating from a safe location. Also please know that if your call drops per Kansas regulation, you will not be allowed to rejoin the hearing."

Throughout the hearing, the UI Referee investigated the issue of whether Kuri had been terminated for misconduct. Approximately 52 minutes into the telephone hearing, Kuri was disconnected from the conference call. The UI Referee acknowledged that because Kuri had been participating by cell phone she would not be allowed to rejoin the hearing. Accordingly, the UI Referee found that Kuri was a nonappearing party and ended the hearing.

On September 30, 2016, the UI Referee issued her decision. The decision indicated that under K.A.R. 48-1-4(g), Kuri was considered a nonappearing party for the purpose of the telephone hearing because her cell phone had dropped the call. The decision further stated that under K.A.R. 48-1-5(a), the UI Referee was required to make her decision based on the record when Kuri's cell phone dropped the call. Based on the record that had been developed before Kuri's call was dropped, the UI Referee determined the following: "Because [Kuri] violated her obligation to the employer, she was discharged from employment due to misconduct connected with the work. Therefore, [Kuri] is disqualified from receiving unemployment insurance benefits."

Kuri submitted a petition for a new unemployment appeal hearing. In her petition, Kuri challenged the UI Referee's disconnection determination. She asserted that she had been placed on hold and that technical difficulties on behalf of the UI Referee were to blame for the disconnection. On October 5, 2016, a UI Referee ruled that Kuri had not

3

shown good cause sufficient for a new hearing. So, the UI Referee forwarded her petition for a new hearing to the Board. The UI Referee told Kuri that her petition would be considered as an appeal of the original UI Referee's decision.

On October 31, 2016, the Board adopted the findings of fact made by the UI Referee and affirmed its decision. It did not add anything to the UI Referee's decision. Kuri then petitioned the Sedgwick County District Court for judicial review of the Board's decision.

On January 17, 2017, the trial court held a hearing on Kuri's appeal. Kuri represented herself pro se. In her testimony, Kuri disputed that she had committed misconduct. She also argued that she was disconnected from the telephone hearing only after the UI Referee had placed her on hold. The trial court identified two issues that needed resolution: (1) whether the termination of the telephone hearing was proper and (2) whether a basis existed under K.S.A. 77-621 to set aside the KDOL's decision to deny Kuri's request for unemployment benefits. The trial court ruled that the termination of the telephone hearing upon Kuri's disconnection was proper. Next, the trial court considered K.S.A. 77-621 and its eight bases for setting aside an agency action. Determining that no basis for relief existed, the trial court denied Kuri's petition for a new hearing before a UI Referee and affirmed the Board's decision.

Kuri timely appealed the trial court's ruling.

Disputes relating to the award or denial of unemployment benefits are reviewable under the Kansas Judicial Review Act (KJRA). *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016). The party asserting that an agency has erred has the burden of proving on appeal that the agency's action was invalid. K.S.A. 2016 Supp. 77-621(a)(1). When an appellate court reviews an agency action, it treats the appeal as though it was made directly to the appellate court, exercising the same statutorily limited review that the trial court would under the KJRA. *Johnson v.*

4

*Kansas Employment Security Bd. of Review*, 50 Kan. App. 2d 606, 610, 330 P.3d 1128 (2014).

The KJRA states that the court shall grant relief from an agency action only if an agency action of the following has occurred:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 2016 Supp. 77-621(c).

Here, Kuri presents two arguments—(1) that the UI Referee incorrectly found that Kuri's cell phone had dropped the call, and, therefore, incorrectly found that she was a nonappearing party, and (2) that she did not engage in any misconduct before she was terminated by College Hills. Kuri, who is pro se, does not advance her arguments under any specific provision of K.S.A. 2016 Supp. 77-621(c). In fact, Kuri does little to develop her arguments, simply denying that her cell phone was disconnected during the telephone hearing and stating that she did not engage in any misconduct.

Generally, a point that is raised in a brief but not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). On the other hand, our Supreme Court has held on more than one occasion that "pro se pleadings are to be liberally construed to give effect to their content rather than adhering to any labels and forms used to articulate the pro se litigant's arguments." *State v. Gilbert*, 299 Kan. 797, 798, 326 P.3d 1060 (2014) (citing *State v. Kelly*, 291 Kan. 563, 565-66, 244 P.3d 639 [2010]). Even so, our Supreme Court has recognized that there are certain instances where "[l]iberal rules of construction cannot transform the reality of a pleading's content or the arguments being advanced, even when a litigant is pro se." *Gilbert*, 299 Kan. at 798.

This proves to be one of those situations where liberal rules of construction cannot transform the reality of Kuri's brief. The reality is that she did not present any substantive arguments.

Nonetheless, a brief discussion of each issue will show that her failure to advance arguments is of no consequence. First, we will review the UI Referee's determination that Kuri was a nonappearing party at the telephone hearing. Next, we will review whether the determination that Kuri was terminated for misconduct was supported by substantial evidence. Based on Kuri's statement of the issues, we will review her arguments as if they were made under K.S.A. 2016 Supp. 77-621(c)(7) and (8).

Under K.S.A. 2016 Supp. 77-621(c)(7), the contested agency action is to be reviewed "in light of the record as a whole." As used in the statute, "in light of the record as a whole" means

> "that the adequacy of the evidence in the record before the court to support a particular
> finding of fact shall be judged in light of all the relevant evidence in the record cited by
> any party that detracts from such finding as well as all of the relevant evidence in the
> record, . . . cited by any party that supports such finding, including any determinations of

6

veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2016 Supp. 77-621(d).

In relation to arguments advanced under K.S.A. 2016 Supp. 77-621(c)(8), our courts recognize that a rebuttable presumption of validity attaches to all actions taken by an administrative agency. The burden of proving that the action is arbitrary or capricious under K.S.A. 2016 Supp. 77-621(c)(8) lies with the party challenging the action. *Sierra Club v. Moser*, 298 Kan. 22, 47, 310 P.3d 360 (2013). The arbitrary or capricious test relates to whether a specific agency action should have been taken or was justified. See *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 121, 363 P.3d 1115 (2015).

*Did the Agency Err in Finding That Kuri Failed to Appear at the Telephone Hearing Under K.A.R. 48-1-5(a)?*

A party to a KDOL telephone hearing is permitted to appear by cellular or mobile phone. K.A.R. 48-1-4(g). If the party's call is dropped, however, the hearing will proceed without the participation of the party and "the inability of the party . . . to participate shall be considered a nonappearance for the purpose of rendering a decision based on the merits of the case." K.A.R. 48-1-4(g). "If the . . . party fails to appear at any hearing, the referee shall make a decision based on the record at hand." K.A.R. 48-1-5(a).

Here, Kuri was warned multiple times about the risks associated with the use of a cell phone in a KDOL telephone hearing. She was warned in writing when she was granted a telephone hearing, and she was personally warned by the UI Referee at the beginning of the telephone hearing. Approximately 52 minutes into the hearing, Kuri's cell phone was disconnected from the conference call. Kuri disputes this fact. She argues

7

that she was placed on hold by the UI Referee and then was disconnected through no fault of her own. Nevertheless, the record does not support her contention. The transcript of the telephone hearing clearly shows that Kuri was not asked to hold before she was disconnected from the call. Although the audio of the telephone hearing was not made available on appeal, the individual who transcribed the hearing certified and swore that the transcript represented "all the testimony taken at a hearing held via conference call, on September 30, 2016, in the matter of the claim of Crystal Kuri."

As the trial court noted, Kuri's version of events was not substantiated by any evidence. The trial court found it unlikely that the UI Referee, College Hills, and the transcriptionist had all colluded to alter the telephone hearing transcript—noting that the UI Referee was a neutral party who had no motive to undercut the legitimacy of Kuri's hearing. Kuri was warned about the risks associated with appearing at the telephone hearing by cell phone. The record as a whole shows that her phone was disconnected at the hearing. The record does not show that she was asked to hold by the UI Referee. Under K.A.R. 48-1-4(g) and K.A.R. 48-1-5(a), she was properly deemed a nonappearing party. Thus, we cannot say that the UI Referee's actions were either arbitrary or capricious under K.S.A. 2016 Supp. 77-621(c)(8).

Accordingly, we affirm the UI Referee's determination that Kuri failed to appear at the September 30, 2016 telephone hearing.

*Did the Agency Err in Determining That Kuri Had Been Terminated for Misconduct?*

Kuri argues that she did not conduct herself unprofessionally while she worked for College Hills. She argues that she had never received any warnings or demerits for any misconduct before she was terminated. Kuri "is in essence asserting that the determination of misconduct was not supported by substantial evidence when considering the record as a whole."

At the telephone hearing, a representative of College Hills testified that Kuri had been discharged for misconduct. Under the Standards of Conduct and Disciplinary Procedures of the College Hills Employee Handbook, College Hills employees could be terminated at the employer's discretion for "[u]nsatisfactory working relationship or performance;" "[e]ngaging in harassment or discrimination of any kind;" or "[d]iscourtesy to residents, guests or other visitors." Kuri acknowledged that she was aware of the policy when she was hired.

A College Hills representative testified regarding the specific incident of misconduct that led to Kuri's termination. The representative testified that on July 29, 2016, Kuri had "a hostile, defensive, almost antagonizing encounter" with a visitor. The encounter led to the visitor filing a grievance with College Hills against Kuri. Although the representative testified that the July 29 encounter led to Kuri's termination, evidence was presented of other incidents of misconduct committed by Kuri. The representative testified that Kuri had received verbal warnings for misconduct on July 8, 2016, and July 11, 2016. Both verbal warnings were the result of Kuri getting into arguments with other College Hills employees. The representative testified that Kuri was verbally warned that she could be terminated for misconduct. Another College Hills representative testified that he had specifically told Kuri that if her behavioral problems continued, her employment was in jeopardy.

At the telephone hearing, Kuri chose not to cross-examine the College Hills representatives. Kuri did, however, testify on her own behalf. She denied all allegations of misconduct and testified that the first time she was warned of any misconduct was on the day that she was terminated. In support of her contention that she had not been warned until the day that she was terminated, Kuri offered an Employee Warning Notice that she received from College Hills. The evidence tended to support Kuri's contention— it was dated August 4, 2016, but listed that she had been previously warned on July 8, 2016, and July 11, 2016.

9

After Kuri's cell phone was disconnected, the UI Referee ended the telephone hearing. In its decision relating to the hearing, the UI Referee indicated that Kuri's testimony would not be considered part of the record because it "was not complete in that she had not been subject to cross-examination at the time her call dropped." For that reason, the UI Referee made its decision based upon the testimony of the College Hills representatives and one exhibit offered by Kuri. Under K.A.R. 48-1-5(a), "[i]f the . . . party fails to appear at any hearing, the referee shall make a decision based on the record at hand." Thus, the UI Referee acted properly in limiting the record.

According to K.S.A. 2016 Supp. 77-621(d), this court may not reweigh any evidence or engage in de novo review of the agency's decision. Moreover, we are concerned only with whether the agency's action is "supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 2016 Supp. 77-621(c)(7). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.' [Citation omitted." *Gannon v. State*, 298 Kan. 1107, 1240, 319 P.3d 1196 (2014).

Here, the appropriate standard of proof is a preponderance of the evidence. See *Rhodenbaugh v. Kansas Employment Sec. Bd. of Review*, 52 Kan. App. 2d 621, 630, 372 P.3d 1252 (2016). A preponderance of the evidence means that something is more likely true than not true. *State v. Barlow*, 303 Kan. 804, 810, 368 P.3d 331 (2016). As was mentioned before, the UI Referee did not consider Kuri's testimony in rendering her decision. But even taking Kuri's testimony into account, the evidence of Kuri's misconduct was substantial and sufficient to support the UI Referee's decision beyond a preponderance of the evidence.

The only evidence working against the Board's decision to affirm the UI Referee is Kuri's testimony and the Employee Warning Notice. The UI Referee believed that the Employee Warning Notice supported Kuri's assertion that she had not been previously warned before she was terminated. That is because the Employee Warning Notice listed

10

July 11, 2016, as the date of warning but was not signed until August 4, 2016. The conflicting dates, however, do not sufficiently undermine the weight of the remaining evidence.

Under K.S.A. 2016 Supp. 44-706(b), "a single instance of misconduct is sufficient to disqualify a claimant where the individual has been discharged for misconduct." *Helmick v. Kansas Employment Security Bd. of Review*, 17 Kan. App. 2d 444, 446, 839 P.2d 49 (1992). The Employee Warning Notice listed that Kuri was issued her final warning on August 4, 2016. The Employee Warning Notice listed that a visitor had filed a complaint against Kuri on July 29, 2016. That instance of misconduct was corroborated by the testimony of the College Hills representatives. The July 29, 2016 incident was also listed as the reason for Kuri's termination on the SIDES Employer Separation Information Response filed by College Hills on August 8, 2016.

Thus, under K.S.A. 2016 Supp. 44-706(b), whether Kuri's final warning was also her first warning makes no difference. There is substantial evidence to support the UI Referee's determination that an instance of misconduct occurred on July 29, 2016. This was sufficient on its own to support Kuri's termination. This is especially true in light of the College Hills policy forbidding unprofessional conduct in the workplace—a policy that Kuri was aware of. Because the UI Referee's decision was supported by substantial evidence, it was not arbitrary or capricious under K.S.A. 2016 Supp. 77-621(c)(8).

Thus, Kuri was properly disqualified from receiving unemployment benefits.

Affirmed.

11